Filed 12/9/20  P. v. Villegas CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HECTOR RODOLFO VILLEGAS,<br><br>Defendant and Appellant. | B300146<br><br>(Los Angeles County<br>Super. Ct. No. GA032022) |

APPEAL from an order of the Superior Court of Los Angeles County, Teri Schwartz, Judge.  Affirmed.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Idan Ivri and Nancy L. Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

# INTRODUCTION

Hector Rodolfo Villegas appeals from the superior court's order denying his petition under Penal Code section 1170.95,[1] which allows certain defendants convicted of murder under a felony murder or natural and probable consequences theory to petition the court to vacate their convictions and for resentencing. Villegas contends the court erred by applying an incorrect standard of proof. We conclude that, although the court initially applied an incorrect standard, the court also applied, in the alternative, the correct standard and that substantial evidence supported the court's ruling under that standard. Therefore, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Villegas of Murder, and This Court Affirms*

At 2:30 a.m. on April 14, 1997, 20-year-old Villegas, in a stolen car, led police officers on a 10-mile high-speed chase, driving 85 miles per hour on residential neighborhoods through several cities. During the chase Villegas drove on the wrong side of the road, ran at least two stop signs and two red lights, and nearly collided with a city bus. The chase ended when he skidded across seven lanes of traffic and crashed into a telephone pole, killing his passenger, 57-year-old Todd Cassick.

The People charged Villegas with second degree murder (§ 187, subd. (a); count 1), willfully fleeing or attempting to elude a pursuing peace officer proximately causing death (Veh. Code,

---

[1]     Undesignated statutory references are to the Penal Code.

2

§ 2800.3, subd. (b); count 2), and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 3). At trial Villegas sought to establish he fled from police only because he was afraid of and pressured by the much older Cassick. Villegas admitted that during the chase he knew what he was doing "was very dangerous" and that he "knew [he] might hurt people by driving this quick."

The trial court instructed the jury on two theories of murder: second degree felony murder and implied malice murder.[2] The jury convicted Villegas on all counts. The court sentenced Villegas on count 1 to a prison term of 15 years to life, on count 2 to four years (stayed under section 654), and on count 3 to a term of two years (concurrent with the sentence on count 1). On direct appeal this court affirmed the judgment. It also dismissed a petition by Villegas for writ of habeas corpus in which he contended he received ineffective assistance of counsel.

B.    *The Legislature Enacts Senate Bill No. 1437*

In 2018 the Legislature enacted Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4), effective January 1, 2019, which amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder by amending sections 188 and 189. New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be

---

[2]    The predicate felony for the felony murder theory was fleeing or attempting to elude a pursuing peace officer while driving with a willful or wanton disregard for the safety of persons or property, in violation of Vehicle Code section 2800.2.

imputed to a person based solely on his or her participation in a crime." New section 189, subdivision (e), provides that a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs (that is, those crimes that provide the basis for first degree felony murder) "is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437, through new section 1170.95, also authorizes an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill No. 1437's changes to the definition of the crime. (§ 1170.95, subd. (a).) The petition must include a declaration by the petitioner that he or she is eligible for relief under this section, the superior court case number and year of the petitioner's conviction, and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

If the petition contains all required information, and the court determines the petition is facially sufficient, section 1170.95, subdivision (c), prescribes a two-step procedure for the

4

court to determine whether to issue an order to show cause: "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.)

If the court determines the petitioner has made a prima facie showing and the court issues an order to show cause, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136 & fn. 7 ["The record of conviction includes a reviewing court's opinion."], review granted Mar. 18, 2020, S260598.)

C. *Villegas Files a Petition Under Section 1170.95, Which the Superior Court Denies After Issuing an Order To Show Cause and Holding a Hearing*

In January 2019 Villegas filed a petition for resentencing under section 1170.95. After the People conceded he had made a prima facie showing he was entitled to relief because "there were multiple theories of [murder] liability available to the jury, including felony murder," the superior court issued an order to show cause. In the ensuing briefing, the People argued Villegas was not entitled to relief because, among other reasons, under current law Villegas "could still be convicted of second degree murder beyond a reasonable doubt" on an implied malice theory. As we will discuss more fully below, "second degree murder based on implied malice has been committed when a person does ""an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."""" (*People v. Watson* (1981) 30 Cal.3d 290, 300; accord, *Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 548.)

In June 2019 the superior court held a hearing, at which the court stated it had reviewed the file, including the entire reporter's transcript of the 1997 trial, the jury instructions, and this court's opinion resolving Villegas's direct appeal and habeas petition. And after observing that, as a result of Senate Bill No. 1437, Villegas could no longer be convicted of murder based on the felony murder theory presented at his trial, the court stated: "I view my role here as a limited one. I view my role as one of making a determination not of guilt beyond a reasonable doubt, but whether the People can prove that the defendant is

6

ineligible under 1170.95 because he could not be convicted under the present state of the law. So the way I view the question is, Can the People demonstrate beyond a reasonable doubt that the defendant could be convicted under the implied malice theory of murder?"

Agreeing that the court had accurately described its role and the dispositive question, the People argued Villegas "could still be convicted beyond a reasonable doubt of implied malice murder given the evidence that was presented during the trial." Counsel for Villegas, however, argued Villegas was entitled to have a jury determine whether "the People can prove beyond a reasonable doubt that [Villegas] is ineligible for relief" under section 1170.95. After the court rejected that argument, counsel for Villegas expressed concern about "the court's emphasi[s] on the word 'could'" when stating the People's burden was to demonstrate beyond a reasonable doubt the defendant could be convicted of murder on an implied malice theory. The court responded, in relevant part: "I don't know that my role here is to say, Is the defendant guilty? Have the People proven him guilty beyond a reasonable doubt of second degree implied malice murder? I don't know that that's my role here. Because the question is could he be, not would he be." Counsel for Villegas answered: "And that's why I go back to asking for a jury." The court indicated it understood Villegas's argument and again outlined what the court viewed its role was. "So I don't view my role as the trier of fact here. I don't view my role as the 13th juror. And if I'm wrong, we'll be back, right, depending on the outcome."

After hearing further argument on the evidence at trial, the superior court found the People had met their burden of proving

7

Villegas was ineligible for relief under section 1170.95. The court stated: "There is more than enough evidence to prove beyond a reasonable doubt that the way this . . . evading was committed does rise to the level of proving that the defendant committed an implied malice murder. . . . The natural consequences of that conduct . . . were dangerous to human life. And I don't think there could be any dispute but that . . . the duration of the chase, the location of the chase, the speeds, the manner in which [Villegas] was driving—all of that was dangerous to human life. And it's clear just by the testimony of the officers, without the defendant's admissions, it's clear he was deliberately engaging in this conduct knowing the danger to human life and acting in conscious disregard for that human life. . . . So while I'm aware . . . that one theory was presented that was legally incorrect, the manner in which the evading was committed . . . does support the implied malice second degree theory of liability here. And as such, I think if Mr. Villegas were tried today, . . . there would be proof beyond a reasonable doubt."

The court continued: "Now, I will extend and enlarge the scope of what I view my role is because I do think it's what I said earlier. But since I don't know what the court of appeal is going to do, I can comfortably say that the evidence today would prove beyond a reasonable doubt implied malice murder given these facts that I have from the testimony from the transcript and from the description by the court of appeal. And then on top of that, if I were to add Mr. Villegas's testimony, that was kind of icing on the cake for the prosecution. I don't know if the prosecution really needed that testimony, but they got it. And it was devastating. . . . But I think the evidence, even without it, is substantial and constitutes proof beyond a reasonable doubt."

The court concluded: "So even assuming my role is to be a trier of fact—which I don't assume it to be—but even if it were and the courts were to say that that's what it is to be, I believe the People have demonstrated beyond a reasonable doubt that the defendant not only could be convicted under the present state of the law, but most likely would be convicted under the present state of the law given those facts. And so given the uncertainty as to how this is going to be construed, the statute, I think there is really more than enough evidence here no matter how I look at it to support this conviction . . . ." Villegas timely appealed.

## DISCUSSION

Villegas contends that the superior court, in finding the People met their burden of proving beyond a reasonable doubt he was ineligible for relief under section 1170.95, erroneously required the People "to prove only that, based on the record of conviction, Villegas *could* have been convicted of implied malice murder, i.e., there was substantial evidence to support such a conviction." He argues that, properly interpreted, section 1170.95, subdivision (d)(3), instead "requires the prosecution to prove beyond a reasonable doubt that the jury would have convicted Villegas of implied malice murder despite the now-erroneous jury instruction on second-degree felony murder."[3] He maintains the People did not meet that burden here.

---

[3] Villegas argues that, "construed in light of the legislative purpose of" Senate Bill No. 1437, section 1170.95, subdivision (d)(3), "requires the trial court . . . to conduct a *Chapman* [*v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705]-like analysis used in cases where the jury was

9

The proper interpretation of section 1170.95, subdivision (d)(3)—"that is, the correct standard to be applied by the superior court in evaluating eligibility for resentencing—is a question of law that we determine de novo." (*People v. Rodriguez* (Dec. 7, 2020, B303099) ___ Cal.App.5th ___, ___ [2020 WL 7137040, p. 6] (*Rodriguez*); see *People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981.) We review for substantial evidence the superior court's factual determination under section 1170.95, subdivision (d)(3), that the prosecution proved beyond a reasonable doubt the petitioner was ineligible for resentencing. (*People v. Lopez* (2020) 56 Cal.App.5th 936, 951-952, petn. for review pending, petn. filed Dec. 7, 2020, S265974; see *People v. Prunty*, *supra*, 62 Cal.4th at p. 71; *Rodriguez*, at p. ___ [p. 6] ["As appellate courts generally do, we apply a deferential standard of review in determining whether the evidence supports any of the superior court's factual findings."]; see also *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095-1096 [where an appeal involves interpreting a statute, the issue is a legal one we review de novo, and where "the trial court applies disputed facts to such a statute, we review the factual findings for substantial evidence'"]; see generally *People v. Penunuri* (2018) 5 Cal.5th 126, 142 [describing standard of review for sufficiency of the evidence to support a criminal conviction].) Applying these standards, we conclude the superior court did not err.

---

instructed on two theories of liability, one of which was erroneous."

A. *The Superior Court Applied, in the Alternative, the Correct Standard*

As we recently held in *Rodriguez, supra,* ___ Cal.App.5th ___, "section 1170.95 requires the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law to establish a petitioner's ineligibility for relief under that statute." (*Rodriguez,* at p. ___ [p. 1]; accord, *People v. Lopez, supra,* 56 Cal.App.5th at p. 951.) We explained that, in evaluating whether the prosecutor has met this burden, "it is the court's responsibility to act as independent factfinder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 . . . ." (*Rodriguez,* at p. ___ [p. 11].) Although the prosecutor did not take that position in the superior court, the Attorney General takes that position on appeal.

In *Rodriguez* we rejected both the standard Villegas urges us to adopt and the standard the superior court initially applied here. (See *Rodriguez, supra,* ___ Cal.App.5th at pp. ___ [pp. 6-11].) We characterized the latter incorrect standard as "would the evidence permit a reasonable jury to find the petitioner guilty of murder with the requisite mental state beyond a reasonable doubt—essentially substantial evidence standard for appellate review." (*Rodriguez,* at p. ___ [p. 6].) And we concluded the superior court in that case erroneously applied that incorrect standard, as reflected, for example, in its statement that "it was required to review the record to determine 'whether or not there is evidence in the record beyond a reasonable doubt that *could* support a murder conviction.'" (*Rodriguez,* at p. ___ [p. 11], italics added; see *ibid.* [superior court's "formulations of the standard used the phrase 'could

11

support'—the appellate standard of review—not 'does support beyond a reasonable doubt' or equivalent language"].)  The superior court here described the standard it initially applied in almost identical language and stated it did not view its role as that of the trier of fact concerning whether Villegas would be guilty of murder on an implied malice theory.  The court stated, "I think they [the legislators] are telling us to act somewhat as a reviewing court."

And had the superior court here proceeded on that basis only, its ruling would have been, like that of the superior court in *Rodriguez*, error.  But acknowledging it might be mistaken that its role was to act as a reviewing court, rather than as the trier of fact, the superior court here "extend[ed] and enlarge[d]" its view of its role and found it could "comfortably say that the evidence today would prove beyond a reasonable doubt implied malice murder."  The court added that, even without Villegas's trial testimony—which the court called "icing on the cake" and "devastating"—"I think the evidence . . . is substantial and constitutes proof beyond a reasonable doubt."  These statements show the superior court applied, in the alternative, the correct standard in determining the People proved beyond a reasonable doubt Villegas was ineligible for relief under section 1170.95.

Of course, at the conclusion of the hearing, when repeating the alternative basis for its ruling, the superior court misstated the correct standard, stating the People had demonstrated beyond a reasonable doubt Villegas not only could be, but "most likely would be," convicted of implied malice murder.  It is not clear what the court meant by that statement.  Viewed in isolation, the phrase "most likely would be" might suggest, as

12

Villegas contends, the court was applying something "akin to a preponderance [of the evidence] standard."

But nothing about the court's and the parties' discussion of the issue at the hearing, when viewed as a whole, suggests the court ever considered or applied a preponderance of the evidence standard. Rather, the court considered two standards: that of a reviewing court applying a substantial evidence standard and that of the independent factfinder, a "13th juror," applying the standard of beyond a reasonable doubt. Believing the former was correct, the court nevertheless applied the latter in the alternative, finding the evidence proved beyond a reasonable doubt Villegas committed implied malice murder. The court's first statement of that alternative ruling, applying the correct standard, was clear. And viewing its later statement in context, we are satisfied the court merely misspoke in using the phrase "most likely would be." (See *People v. Carrington* (2009) 47 Cal.4th 145, 201 [although the trial court's statement of the standard for determining whether to modify a verdict of death to life imprisonment without parole was "difficult to interpret," it apparently "misspoke," and the "court's ruling, when considered in its entirety," indicated it applied the correct standard]; *People v. Wilson* (2008) 44 Cal.4th 758, 809, fn. 12 [trial court "apparently misspoke" in identifying the controlling statutory provision because other statements made clear it relied on the correct provision]; *People v. Griffin* (2004) 33 Cal.4th 536, 570 [it was "reasonable to conclude" the trial court applied the correct standard, "even if it did not quote it exactly," when its words were viewed "in context"], disapproved on another ground in *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32; *People v. Deere* (1991) 53 Cal.3d 705, 725 ["it is readily apparent, from the

13

context of the remark itself, that the court simply misspoke itself"].)

Villegas also isolates other individual words used by the superior court to argue that, even in the alternative, the court applied an incorrect standard. Specifically, he cites the court's statements that "I can comfortably say that the evidence today would prove beyond a reasonable doubt implied malice murder given these facts" and "I think there is more than enough evidence here no matter how I look at it to support this conviction." Villegas argues that, "in both instances," the superior court "was equivocal, stating that the prosecution's evidence *would* prove beyond a reasonable [doubt] Villegas's guilt and that the evidence *supported* a conviction for implied malice murder. It did not state that the evidence proved Villegas's guilt beyond a reasonable doubt, as the standard advocated by respondent requires."

These arguments are not persuasive. Concerning the first statement Villegas cites, the superior court's use of the conditional verb "would" was, as we explained in *Rodriguez*, "a normal grammatical construct to express the hypothetical situation an inmate . . . faces when filing the petition—what would happen today if he or she were tried under the new provisions of the Penal Code?" (*Rodriguez, supra*, ___ Cal.App.5th at p. ___ [p. 9].) And the superior court had already made clear how it was using the word "would," in this context, when earlier explaining it believed its role was to act as a reviewing court, not an independent factfinder, "[b]ecause the question is, could [Villegas] be, not would he be" guilty of implied malice murder. The superior court thus was using the word "would" exactly as we did when articulating the proper standard

14

in *Rodriguez*: "[I]t is the court's responsibility to . . . determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189." (*Rodriguez,* at p. ___ [p. 11].)

Moreover, Villegas is presumably suggesting the court's use of "would" in the statement in question indicates it was applying, even in the alternative, a substantial evidence standard. That interpretation is not reasonable, however, given the court had already applied that standard and was now, alternatively, applying a different one. The same is true of Villegas's argument concerning the court's use, in the other statement he cites, of the word "supported." Finally, to the extent the court's use of these two words in these two statements was equivocal—and it wasn't—we presume the court was using the words correctly. (See *People v. Kareem A.* (2020) 46 Cal.App.5th 58, 77 ["'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.'"]; *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12 ["''[w]e must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error[;] it will not be presumed,'" [and] any uncertainty in the record must be resolved against the defendant'"].)

B.    *Substantial Evidence Supported the Superior Court's Ruling*

"The Supreme Court has "'interpreted implied malice as having 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The

15

mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.""""" (*People v. Jones* (2018) 26 Cal.App.5th 420, 442; see *People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358 [the defendant must have "'actually appreciated the risk of his or her actions'"].) "'It is unnecessary that implied malice be proven by an admission or other direct evidence of the defendant's mental state; like all other elements of a crime, implied malice may be proven by circumstantial evidence.'" (*Jimenez*, at p. 1358.)

Ample evidence supported the superior court's finding the People proved beyond a reasonable doubt Villegas was guilty of implied malice murder. In evading officers for 10 miles, Villegas drove 85 miles per hour through residential neighborhoods, drove on the wrong side of the road, ran through stop signs and red lights, nearly hit a bus, and finally skidded across multiple lanes of traffic before crashing into a telephone pole violently enough to kill his passenger. He admitted he knew what he was doing was very dangerous and might hurt people. That admission, as the superior court observed, was icing on a substantial cake of circumstantial evidence showing that the natural consequences of the way Villegas drove while evading police were dangerous to life, that he knew his driving endangered human life, and that he drove with conscious disregard for life. (See *People v. Watson*, *supra*, 30 Cal.3d at pp. 300-301 [evidence supported a finding the defendant committed implied malice murder where, while intoxicated, he "drove at highly excessive speeds through city streets" and "nearly collided with a vehicle after running a red light" before crashing into the victims' car]; *People v. Moore* (2010) 187 Cal.App.4th 937, 941 [substantial evidence supported

16

a conviction for implied malice murder where the defendant "drove 70 miles per hour in a 35-mile-per-hour zone, crossed into the opposing traffic lane, caused oncoming drivers to avoid him, ran a red light and struck a car in the intersection"].)

## DISPOSITION

The order denying Villegas's petition under section 1170.95 is affirmed.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

17